**BALEJA v. HENDERSON et al. (No. 6760.)**

(Court of Civil Appeals of Texas. San Antonio. May 17, 1922. Rehearing Denied June 14, 1922.)

1. Vendor and purchaser ⟐⟐65(1)—Statement of number of acres held part of description.

The statement of the number of acres after a description by metes and bounds is merely part of the description, when the amount of land can be ascertained by monuments and boundaries, unless there is an express covenant that the land conveyed contains the number of acres mentioned.

2. Evidence ⟐⟐461(4)—Circumstances admissible to determine whether sale was in bulk or by acre.

The facts and circumstances surrounding a contract for the sale of land are admissible to ascertain the intention of the parties as to whether the sale was by acre or in bulk for a lump sum, where the recitals of a contract are ambiguous in this respect.

3. Vendor and purchaser ⟐⟐80—Evidence sufficient to show sale in bulk.

Evidence, admitted to settle an ambiguity of a contract for the sale of land, as to whether the land was sold in bulk or by acre, *held* ample to show a sale in bulk was intended.

4. Frauds, statute of ⟐⟐63(4)—Breach or abandonment of contract may be shown by parol.

No writing is necessary to show abandonment or breach of a contract to purchase land.

5. Appeal and error ⟐⟐742(1)—Assignment and corresponding proposition should bear same number.

Where propositions do not bear numbers corresponding to the numbers of the assignments to which they relate, respectively, the assignments may be disregarded.

6. Trial ⟐⟐133(1)—Failure to instruct as to trivial remark of counsel not error.

In a suit for specific performance of a contract to sell land, failure of the trial court to

instruct the jury not to consider a remark of counsel that plaintiff "may plead ignorance" *held* immaterial and too trivial to be considered.

**7. Specific performance ⬅120—Purchase of other land admissible to show breach of contract.**

In a suit for specific performance of a contract to sell land, evidence that the purchaser had bought other land, after the period had expired in which under the contract the sale was to be closed and payment made by him, was admissible as tending to show breach.

**8. Appeal and error ⬅742(4)—Proposition broader in scope than assignment not considered.**

A proposition relating to the admission of evidence, which is broader in scope than the assignment to which it relates, will not be considered even under the new rules.

**9. Specific performance ⬅120—That plaintiff's offer to perform was delayed held admissible.**

In a suit for specific performance of a contract to sell land, testimony that plaintiff had not offered to pay for the land until the time for payment expressed in the contract had expired and he had decided to sue was admissible; the evidence showing that plaintiff's belated offer was inspired by an attorney.

**10. Evidence ⬅242(1)—Agent's admissions bind principal.**

Admissions of an agent within the scope of his authority are those of his principal.

**11. Specific performance ⬅120—Proof of vendor's compliance with contract admissible.**

In a suit for specific performance of a contract to sell land, proof of efforts by the vendor to fulfill its terms, especially that he had tendered an abstract of title and a deed, was properly allowed.

**12. Evidence ⬅461(1)—Testimony of parties as to ambiguity in land contract admissible.**

In a suit for specific performance of a contract to sell land, testimony of the parties as to their intent in a matter about which the contract is ambiguous is admissible.

**13. Specific performance ⬅100 — Purchaser may not take advantage after abandonment of contract.**

In a suit for specific performance of a contract to sell land, plaintiff, having failed to perform the contract and abandoned it, will not afterward be permitted to profit by his breach and take advantage of the land's increased value.

Appeal from District Court, Tarrant County; Ben M. Terrell, Judge.

Suit by John Baleja against Bob W. Henderson and Laura B. Johns and others, and cross-action by defendants Laura B. Johns and others against defendant Henderson. From the judgment, plaintiff appeals. Affirmed.

McCart, Curtis & McCart, of Fort Worth, for appellant.

Marvin H. Brown, Charles T. Rowland, McLean, Scott & McLean, Sam R. Sayers, and E. C. Johns, all of Fort Worth, for appellees.

FLY, C. J. This suit was instituted by appellant against appellees, Bob W. Henderson, Laura B. Johns, E. C. Johns, R. C. Johns, C. H. Johns, and Faye Johns, heirs of George Johns, deceased, to compel specific performance of a contract for the sale of a certain 162.23 acres of land at a total consideration of $21,000 to be paid by appellant, after deducting therefrom the total consideration for a shortage in acres, as in the alternative that he have a judgment for damages in the sum of $14,520.35 with interest at 6 per cent. per annum. The cause was submitted to a jury on special issues, and upon their responses judgment was rendered that appellant recover nothing by his suit and pay all costs expended therein, and also that the heirs of Johns take nothing by their cross-action against Henderson.

It was alleged in the petition that Henderson and appellant entered into a written contract of sale and purchase of a certain farm, represented by Henderson to contain 180 acres of land, which was to be surveyed, for the sum of $21,000, to be paid by appellant, it being the intention of the parties if the number of acres were less than 180 the price should be proportionately reduced; that a survey disclosed that there were only 162.23 acres of land, that thereupon appellant demanded of Henderson a deed of conveyance to the 162.23 at the pro rata price agreed upon, but Henderson failed and refused to execute such deed unless the full sum of $21,000 was paid by appellant. Appellant alleged that Henderson then sold the land to George Johns, although the written contract had been duly recorded before that time. The death of Johns was alleged, and his heirs made parties, and they pleaded over against Henderson his warranty.

The contract forming the basis of the suit is as follows:

"The State of Texas, County of Tarrant.

"Know all men by these presents:

"That this agreement entered into by and between B. W. Henderson of Tarrant county, party of the first part, and John Baleja of Kaufman county, party of the second part, witnesseth:

"That first party sells the second party the following described property, situated in Tarrant county, Texas, to wit:

"His 180-acre farm situated about 7 miles north of Fort Worth, 160 acres out of the M. Elliston survey, balance out of J. M. Robinson survey. Above land now occupied by first party as his homestead which is a nice brick

home, together with all other improvements, acreage to be ascertained by actual survey.

"First party agrees to sell second party all hay on place and 50 bushels of wheat at market price at time possession is given.

"Second party to pay therefor the sum of $21,000 on the following terms: Fifteen thousand cash assumes six thousand dollars now held by Texas Securities Co. Said sale to be closed up within 30 days from this date.

"First party is to furnish abstract certified to date to said property showing good title. Second party deposits with Freeman & Lane and Justin Stine, agents, two thousand dollars as part of purchase money for said property and as a guaranty that he will take the property if title proves to be good. If the title proves defective said money deposited as above stated shall be returned to second party.

"Witness our hands at Forth Worth, Texas, this 15th day of September, 1917.

             "Bob Henderson.
             "John Baleja.
"Witnesses: T. B. Freeman."

The contract was properly acknowledged on its date and was filed for record October 10, 1917. In response to the issues submitted to them, the jury found that the sale was not one by the acre, that appellant abandoned the contract, that he did not at any time within 30 days after the execution of the contract offer to perform the same, that the reasonable market value of the land with improvements at time of contract was $250 an acre, and its reasonable market value without improvements was $70 an acre, that Henderson notified appellant within 30 days from execution of the contract that he would not convey the land for less than the contract price of $21,000, and that Henderson would not at any time have taken less than the contract price. The findings are fully sustained by the statement of facts.

Appellant has with diligence endeavored to follow the rules adopted by the Supreme Court of Texas, on June 22, 1921, and consequently this court has had to expend much more time in considering the brief than would have been necessary under the old rules. The provision of Rule 32 (230 S. W. vii) has been construed by appellant to mean copying the assignments of error, not into the brief itself, but after the signature of the attorneys "at the back of the brief." This is being done by many attorneys, but, whether correct or not, we cannot say, for the "at the back of the brief" is very uncertain and indefinite, but it accomplishes the end of placing them as far as possible from the propositions growing out of them. With extreme care the statement appertaining to each proposition is separated from it by the rules and lodged in another part of the brief, and a long list of authorities is placed on the front page of the brief, and the court may read and digest the list and ascertain if possible their pertinency.

[1] The first assignment of error complains of the refusal of the court to instruct the jury to return a verdict in favor of appellant, but whether for specific performance or for damages is not indicated. It is the rule in descriptions of land, after giving metes and bounds, to state the number of acres; but, unless there is an express covenant that the land conveyed contains the number of acres mentioned, the mention of the number of acres will be taken to be merely a part of the description of the land when the amount of the land can be ascertained by monuments and boundaries. The language of the contract of sale must show that it was intended to convey a specified number of acres, or the mention of the number of acres will be merely a matter of description. Devlin, Real Estate, §§ 1044, 1045.

[2] In the contract upon which this suit is based were recitals that rendered it ambiguous, and very properly the court permitted the presentation of facts and circumstances to ascertain the intention of the parties to the contract. This evidence was conflicting, although much more reasonable and convincing upon the part of appellee Henderson. The jury credited the testimony, and found that the sale was in bulk for a lump sum and not by the acre. They also found that appellant failed to comply with the terms of the contract and abandoned it.

[3] The evidence showed that the contract was made in September, 1917, when the United States was at war with Germany and appellee Henderson had entered the army and was anxious to close the land sale before he was ordered off by his superior officers, and the 30 days became and was intended as the very essence of the contract. Yet appellant, at no time during the 30 days named in the contract, offered to perform his part of the contract, and, although a good title was shown by the abstract presented by Henderson, appellant failed and refused to accept the same. The land and improvements were of the market value of $22,340 when the contract was executed, and at time of trial was worth at least $50,000. Henderson did not sell to Johns until after appellant had breached the contract. Appellant testified:

"After I signed the contract, my lawyers passed the title, and they told me it was a good title. I did not then go out to him (Henderson) and offer him the $15,000 and ask for a deed, for I was not here. I did not at any time after this contract was signed go to Mr. Henderson and offer him the $15,000 and demand a deed. I never at any time during the 30 days get the $15,000 together so that I could lay it down to him."

He knew that Henderson had to go in the army, and knew that was the reason the 30 days was inserted in the contract so that the matter could be closed up before he left. He waited until Henderson was enlisted in the army, and then bought another place and

instituted suit against him. Henderson knew nothing about appellant's desire to reduce the price of the land until in the latter part of October, when he learned it at Camp Travis, San Antonio, where he was stationed. He testified that the land was sold in bulk for $21,000. Henderson tendered a deed to appellant under the terms of the contract. The facts are ample to show a sale in bulk, and that appellant breached it. It was in evidence that Stine, the agent of appellant, stated to Rowland, the agent of Henderson, that his principal did not have the necessary money and could not get it until January 1, 1918, and declared the trade off. It would have been preposterous under the facts to have charged the jury to find for appellant. The first and second assignments of error are overruled.

[4] The third assignment of error is overruled. The question of abandonment was raised by the pleadings and established by the evidence. No writing was necessary to show abandonment or breach of the contract. An instrument of writing solemnly setting out the breach of a contract would be a rare gem. Acts speak louder than words in cases of breaches of contract. It was not necessary for appellant to execute and deliver to Henderson an instrument stating that for certain reasons, or no reasons, he had not paid certain money in 30 days, and would not tender the money but buy another place immediately after the 30 days had expired. The statute of frauds does not demand any such comic opera performance.

The fourth assignment of error is based on the assumption that all the evidence showed that Henderson breached the contract, while there was no evidence to that effect. Henderson showed a desire to follow the contract and comply with it until it was breached by appellant. Appellant never was relieved of his duty to perform his part of the contract, and Henderson executed and offered a clean title and a deed of conveyance, which appellant ignored.

[5, 6] There is nothing given in connection with the propositions to show under what assignment of error any proposition is offered, and the numbering of the propositions differs from that of the assignments. It would seem if no other aid was given to the court the propositions would follow the numbering of the assignments, but this is not done. For instance, the fifth assignment of error complains of the action of the court in connection with conversation of McLean, of counsel for appellees, with appellant while testifying, and the fifth proposition is directed to the admission of certain testimony. The fourth proposition, however, seems to belong to the fifth assignment, which, of course, adds to the confusion and increase of labor of this court. The assignment complains because the court refused to instruct the jury

not to consider a remark of counsel that appellant "may plead ignorance." Everything else objected to by appellant was excluded, and the remark indicated is too trivial and immaterial to demand consideration.

[7, 8] Assignment of error No. 6 complains of the court allowing appellant, on cross-examination, to testify that in November subsequent to the 30 days named in the contract he had purchased a home. The fifth proposition, which is the only one which can possibly be made to apply to the sixth assignment, has been amplified so as to take in the purchase of the place, the amount paid for it, and the failure of appellant to pay the $15,000 on the land contracted for from Henderson and the failure to pay that sum into court. We cannot believe the new rules, while permitting many remarkable things, would authorize such expansion in propositions. The evidence was admissible as to the purchase of the other property as a circumstance tending to show a breach of the contract. The assignment of error and its overgrown proposition are overruled, as well as assignments of error 7 and 8, which relate to the same matter.

[9] Appellant swore that he had never offered to pay the $21,000 named in the contract, until he had made up his mind to sue, and it was not error to allow the witness Lane to testify on the subject. The evidence showed clearly that appellant's belated offer to pay for the land was under the inspiration of an attorney. The sixth assignment of error is overruled.

[10] Stine was undoubtedly the duly accredited agent of appellant, and his admissions along the line of his employment were the admissions of his principal, and the seventh assignment of error is overruled.

[11] There is no merit in the eighth assignment of error, and it is overruled. It was proper to allow proof of the efforts of Henderson to fulfill the terms of his contract, and nothing was more pertinent than to show that he had tendered an abstract of title and a deed to appellant.

[12] The contract was ambiguous, and the court allowed both parties to testify as to their intent in the matter. The ninth and tenth assignments of error are overruled.

[13] The facts in this case clearly indicate that the land of Henderson was increasing in value, and, only after abandonment of his trade and after buying another place, appellant conceived the idea that he ought to enforce the contract. He made no effort prior to his suit to comply with the terms of his contract, and paid no money nor offered to pay it. He let his opportunity escape, and will not be permitted at this late day to profit by his breach of his contract and obtain the benefits of increased value of the land.

The judgment is affirmed.