

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-10-00105-CV

NORTHWEST INDEPENDENT            APPELLANT
SCHOOL DISTRICT

V.

CARROLL INDEPENDENT            APPELLEE
SCHOOL DISTRICT

----------

### FROM THE 141ST DISTRICT COURT OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

This appeal arises from a dispute between Appellant Northwest Independent School District (NWISD) and Carroll Independent School District (CISD) over their common boundary line. NWISD filed this interlocutory appeal arguing that the trial court did not have jurisdiction over CISD's claims. Because

---

[1]*See* Tex. R. App. P. 47.4.

we agree that the trial court did not have jurisdiction over CISD's claims, we reverse the trial court's denial of NWISD's plea to the jurisdiction and dismiss CISD's claims.

## Background

In 1948, voters in the Haslet Common School District No. 97 (situated partly in Tarrant County and partly in Denton County), Rhome Independent School District (in Wise County), Roanoke Independent School District (situated partly in Tarrant County and partly in Denton County), and Justin Rural High School District (in Denton County) petitioned for an election to consolidate those districts into one independent school district—NWISD. A majority of qualified voters in those districts voted in favor of consolidation. The minutes of the Tarrant County commissioners court reflect an order by the county judge in accordance with the election, declaring the results of the election and declaring that the districts be consolidated as NWISD.

The minutes of the commissioners court for Denton County likewise reflect a petition by qualified voters of Roanoke Independent School District and of Justin Rural School District to hold an election for the consolidation. In accordance with that petition, the commissioners court gave notice of elections to be held in December 1948 within those districts. The notice stated that Roanoke ISD was partially in Tarrant County and partially in Denton County. After the election, the commissioners court entered an order declaring the results of the election and declaring the districts to be consolidated.

2

The order of consolidation, which provides the metes and bounds for the new district, described part of the boundary as "East to the Northeast corner of the said R. A. Smith survey; THENCE South to *the County Line between Denton and Tarrant Counties*; THENCE West along *said County line* to a point in said line due North of the Northwest corner of the M. Hunt survey in Tarrant County." [Emphasis added.] The description concluded by referring to the new district as

> containing a total of 126,062 acres of land more or less, calculated to be 197 square miles, *being a consolidation of all the lands comprising the school districts* known prior to this consolidation as the Justin Rural High School District in Denton County, [t]he Roanoke Independent School District in Denton and Tarrant Counties, the Haslet Common School District in Denton and Tarrant Counties, and the Rhome Independent School District in Wise County. [Emphasis added.]

Then, in 1949, qualified voters from the newly-consolidated NWISD "of Denton, Wise[,] and Tarrant Counties" petitioned for an election to consolidate the district with Fairview Common School District No. 39 of Wise County. In accordance with the election results, the commissioners court for Denton County entered an order declaring the districts to be consolidated. This order described the new boundaries of the district by metes and bounds. The description included the same reference to the Denton-Tarrant county line set out above. As with the description given when the district was first created by consolidation, the order stated after the metes and bounds description that the consolidated NWISD is "a consolidation *of all the lands comprising the school districts*" that were being consolidated. [Emphasis added.]

3

The Wise County commissioners court likewise entered an order of consolidation in accordance with the consolidation election held in the Fairview district.

In 1959, qualified voters of Carroll Common School District No. 99 voted to become CISD. In accordance with the election, the county judge ordered the district incorporated as CISD and entered the order in the minutes of the commissioners court for Tarrant County. The district boundaries were described by metes and bounds, "[b]eginning in the North line of Tarrant County at a point directly north of the most northerly, northwest corner of the John L. Whitman Survey," and closing "[n]orth to *a point in the North line of Tarrant County*, Texas; THENCE east in the said Tarrant County North line to the place of Beginning." [Emphasis added.]

In 2002, this court decided *Tarrant County v. Denton County*, in which we stated that the boundary between those two counties was not definite and well-defined, and we noted that the counties had entered into an agreement providing that they had a bona fide dispute over the location of their boundaries.[2] This court then held that the agreement between the counties to survey the county line and set the boundary in accordance with that survey was enforceable.[3] As a result of this decision, the boundary line between Tarrant County and Denton

---

[2]*Tarrant Cnty. v. Denton Cnty.*, 87 S.W.3d 159, 173 (Tex. App.—Fort Worth 2002, pet. denied), *disapproved of on other grounds by Martin v. Amerman*, 133 S.W.3d 262, 268 (Tex. 2004).

[3]*Id.* at 175.

County was set at a location north of where the two school districts had previously considered their common boundary to be (the agreed county line).

On March 1, 2005, CISD filed suit against NWISD for trespass to try title, seeking to have the common boundary line established at the agreed county line, which would shift to CISD some property and students that have until now been in NWISD. CISD also sought a declaratory judgment regarding its rights and duties in the disputed area.

NWISD filed a plea to the jurisdiction, which the trial court granted.[4] This court reversed the trial court's ruling and remanded the cause back to the trial court.[5] On remand, CISD amended its pleadings, seeking a declaratory judgment that the districts' common boundary line is located on the agreed county line and asserting alternatively a claim for trespass to try title under section 22.001 of the property code.

NWISD filed another plea to the jurisdiction, and both parties filed for summary judgment and attached evidence in support. NWISD reasserted some of the same grounds it had asserted in its previous plea to the jurisdiction and additionally argued that CISD's claims were an impermissible attack on the 1948 and 1949 elections creating NWISD. CISD responded in part that it was not

---

[4]*Carroll Indep. Sch. Dist. v. Nw. Indep. Sch. Dist.*, 245 S.W.3d 620, 623 (Tex. App.—Fort Worth 2008, pet. denied) (*CISD I*).

[5]*Id.* at 626.

challenging the elections or the commissioners court orders resulting from those elections and was in fact relying on them.

The trial court entered an order denying NWISD's plea to the jurisdiction, granting summary judgment for NWISD on CISD's claim for trespass to try title, denying the remainder of NWISD's summary judgment motion, and denying CISD's summary judgment motion. NWISD then filed this appeal.

## Standard of Review

We review a trial court's ruling on a plea to the jurisdiction de novo.[6] A plaintiff has the burden of alleging facts that affirmatively demonstrate that the trial court has subject-matter jurisdiction.[7] A plaintiff asserting a claim against a governmental unit must allege facts that affirmatively demonstrate that the Legislature has waived immunity for the claims brought.[8]

In determining a plea to the jurisdiction that challenges the pleadings, a court looks at the allegations in the plaintiff's pleadings and accepts them as true.[9] If the pleadings affirmatively negate the existence of jurisdiction, then a

---

[6]*Pakdimounivong v. City of Arlington*, 219 S.W.3d 401, 407 (Tex. App.—Fort Worth 2006, pet. denied).

[7]*City of Fort Worth v. Robinson*, 300 S.W.3d 892, 895 (Tex. App.—Fort Worth 2009, no pet.).

[8]*City of Arlington v. Randall*, 301 S.W.3d 896, 906 (Tex. App.—Fort Worth 2009, pet. denied).

[9]*Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004); *Pakdimounivong*, 219 S.W.3d at 407.

6

plea to the jurisdiction may be granted without allowing the plaintiffs an opportunity to amend.[10]

If the plea to the jurisdiction challenges the existence of jurisdictional facts, a court must consider the relevant evidence necessary to resolve the jurisdictional issues raised.[11]  When a jurisdictional challenge also implicates the merits of the plaintiff's claim, then the trial court considers the evidence submitted by the parties to determine if a fact question exists.[12]

### Declaratory Judgments and Governmental Immunity

The Declaratory Judgments Act (DJA) generally permits a person "whose rights, status, or other legal relations are affected by a statute [or] municipal ordinance" to have determined any question of construction or validity arising under the statute or ordinance "and obtain a declaration of rights, status, or other legal relations thereunder."[13]  But there is no general right to sue a governmental entity, such as a school district,[14] for a declaration of rights.[15]  The DJA is not a

---

[10]*State v. Lueck*, 290 S.W.3d 876, 884–85 (Tex. 2009); *Miranda*, 133 S.W.3d at 227.

[11]*Miranda*, 133 S.W.3d at 227.

[12]*Id.*

[13]Tex. Civ. Prac. & Rem. Code Ann. § 37.004(a) (West 2008).

[14]*See San Antonio Indep. Sch. Dist. v. McKinney*, 936 S.W.2d 279, 283 (Tex. 1996) (noting that the Legislature has defined school districts as political subdivisions of the State for purposes of sovereign immunity).

general waiver of immunity; the DJA is "merely a procedural device for deciding cases already within a court's jurisdiction."[16] Thus, governmental immunity will bar a declaratory judgment action if the action has the "effect of establishing a right to relief against the State for which the Legislature has not waived . . . immunity."[17]

## Analysis

We begin by addressing CISD's assertion that some of NWISD's arguments are governed by the law of the case doctrine. The application of that doctrine by a court of appeals lies within the discretion of that court, depending on the particular circumstances of the case, and "[o]ur duty to administer justice under the law, as we conceive it, outweighs our duty to be consistent.[18] Thus, if we determined that our prior decision was erroneous, we would not be bound by it.[19] In this appeal, however, the law of the case doctrine is inapplicable. Not only did the parties amend their pleadings on remand and file additional evidence

---

[15] *See Tex. Parks & Wildlife Dep't v. Sawyer Trust*, 354 S.W.3d 384, 388 (Tex. 2011) (agreeing that "there is no general right to sue a state agency for a declaration of rights").

[16] *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 444 (Tex. 1993).

[17] *Sawyer Trust*, 354 S.W.3d at 388.

[18] *Briscoe v. Goodmark Corp.*, 102 S.W.3d 714, 717 (Tex. 2003).

[19] *See id.* at 716.

8

with the trial court, but the issue on which we decide this appeal is one that was not raised in the prior appeal.[20]

NWISD brings three issues on appeal, all asserting that the trial court did not have jurisdiction over CISD's claims. In its third issue, it argues that the trial court lacked jurisdiction to adjudicate CISD's claims because CISD's lawsuit is an untimely contest to the election creating NWISD and its boundaries. It contends that CISD's claims "lodge an election contest by challenging the results of the election creating NWISD and setting its then-existing southern boundary" and that CISD "seeks to avoid the results of the 1948 and 1949 elections."

A trial court has jurisdiction over an election contest only to the extent authorized by statute.[21] If CISD challenges the boundaries set by the election, then it challenges the results of the election, and that challenge can only be made in an election contest.[22] Accordingly, if CISD's suit challenges the results

---

[20]*See Hudson v. Wakefield*, 711 S.W.2d 628, 630 (Tex. 1986) (stating that the doctrine applies only to questions of law, not to questions of fact, and that "the doctrine does not necessarily apply when either the issues or the facts presented at successive appeals are not substantially the same as those involved on the first trial" and thus, "when in the second trial or proceeding, one or both of the parties amend their pleadings, it may be that the issues or facts have sufficiently changed so that the law of the case no longer applies").

[21]*Nichols v. Seei*, 97 S.W.3d 882, 883 (Tex. App.—Dallas 2003, no pet.); *State ex rel. Kimmons v. City of Azle*, 588 S.W.2d 666, 670 (Tex. Civ. App.—Fort Worth 1979, writ ref'd n.r.e.).

[22]*See Clary v. Hurst*, 104 Tex. 423, 431, 138 S.W. 566, 571 (1911) (referring to an election contest as a suit challenging the validity of the election or the correct ascertainment of the result thereof); *Kincannon v. Mills*, 275 S.W. 1083, 1084 (Tex. Civ. App.—Waco 1925, writ dism'd w.o.j.) ("An election contest

of the election, the suit would constitute an improper collateral attack on the election, and, in that case, the trial court erred by denying NWISD's plea to the jurisdiction.

CISD responds that rather than challenging the elections, it is relying on them, because the elections and the orders declaring the election results established the districts' boundary at the "county line," and CISD is merely seeking a declaration about the location of that line. CISD contends that the argument that it is trying to move the boundary line is contradicted by the statement in *Tarrant County* that the county line had never been located.[23] That is, a line that does not exist cannot be moved.

CISD is essentially asserting that the districts' common boundary line has always been in dispute, that the school districts have never treated the boundary as established, and that the trial court's judgment is needed to settle the question. CISD is only relying on the election if the result of the election was the establishment of a school district either with no boundary or with a boundary that

---

may be . . . for the purpose of having the result declared differently from what it has been declared by the proper authorities."); *see also Nichols*, 97 S.W.3d at 883 (noting that the power of a trial court to hear election contests exists only to the extent authorized by statute); *State v. City Comm'n of San Angelo*, 101 S.W.2d 360, 362 (Tex. Civ. App.—Austin 1937, no writ) (noting that matters that are properly raised in an election contest cannot be raised in collateral proceedings).

[23] *See Tarrant Cnty.*, 87 S.W.3d at 173 (noting that Denton County and Tarrant County had a bona fide dispute over their common boundary and that the boundary was not definite and well-defined).

moves according to wherever the county line may be located at any point in time. That is, CISD apparently reads the language establishing the district as setting the boundary line as "wherever the county line may be located, now or at any time in the future." CISD is correct that this court held in *Tarrant County* that the boundary between the two counties was not definite and well-defined, but that does not necessarily mean that the location of the county line was not definite for school district purposes. That is, a later dispute between *counties* over the location of their boundary cannot change the boundary of two *school districts* already in existence.

We agree with NWISD that CISD is in fact attempting to move the districts' boundary line because that location was established when NWISD was created by consolidation. NWISD was created by consolidation of districts that were already in existence. As noted in the description of the new district created by consolidation, the new district consisted of all of the lands comprising the school districts being consolidated. Though such language is not controlling if the land included in the consolidation can be ascertained by the metes and bounds provided, this language is evidence that all of the territory of the consolidated school districts was included in the consolidation.[24] No allegation has been

---

[24]*See Baleja v. Henderson*, 241 S.W. 1080, 1082 (Tex. Civ. App.—San Antonio 1922, writ dism'd w.o.j.) (stating that, with respect to sales of land, "[i]t is the rule in descriptions of land, after giving metes and bounds, to state the number of acres," that "unless there is an express covenant that the land conveyed contains the number of acres mentioned, the mention of the number of acres will be taken to be merely a part of the description of the land when the

11

made that the boundary lines of these consolidated districts was ever unclear.[25] The districts that already existed had boundary lines—the location of which CISD does not challenge. The territory that had been included in those districts became a part of the new, consolidated NWISD. The voters seeking to establish the new district clearly intended to and did incorporate the territory that had been in the consolidated school districts, no more and no less. Those districts had actual, existing boundaries; the descriptions of the districts referred to an actual, physical location when they referenced the county line; and the elections and orders creating NWISD established that location as the actual, physical boundary.

The parties have not directed us to any evidence in the record of when the component school districts of NWISD were created, and we have found none. But we note that from 1911 until 1917, when creating common school districts

---

amount of the land can be ascertained by monuments and boundaries," and that "[t]he language of the contract of sale must show that it was intended to convey a specified number of acres, or the mention of the number of acres will be merely a matter of description").

[25] *See, e.g., Dist. Trs. of Midway Common Sch. Dist. No. 7 & Leon Cnty. v. Leon Cnty. Sch. Trs.*, 203 S.W.2d 860, 863 (Tex. Civ. App.—Waco 1947, no writ) (holding that order consolidating two contiguous common school districts was not void for failure to describe the district by metes and bounds because, there being no evidence to the contrary, the boundaries of the two districts were presumed to be described and recorded in the county clerk's office and, citing the maxim "[t]hat is certain which is susceptible of being made certain," holding that because the metes and bounds of the newly created high school district could be ascertained by reference to the records in the county clerk's office, the location of the boundaries of the two common school districts were presumed to be of record).

containing territory within more than one county, the commissioners courts of each county (and from 1917 until at least 1923, the boards of county school trustees) were required to pass an order describing the district's territory by metes and bounds, "giving the course and direction with the exact length of each line contained in such description and locating each corner called for upon the ground," as well as stating "the acres of each survey and parts of surveys of lands contained in such district, together with a map showing the conditions upon the ground as described in the field notes" and "giving the number of acres of land contained in each survey and parts of survey contained in each county," and, importantly, "showing the *exact position and location of the county line* in the territory created."[26]  The Haslet Common School District included territory in both Denton and Tarrant County.  If that district were created while that statute was in effect, when the commissioners or trustees of those two counties passed the orders creating this district, they were required to give a metes and bounds description, provide a map, and show the exact position of the county line.[27]

---

[26] *Drake v. Yawn*, 248 S.W. 726, 728 (Tex. Civ. App.—Beaumont 1923, writ ref'd) (emphasis added).

[27] *See also* Act of Mar. 30, 1927, 40th Leg., R.S., ch 238, § 1, 1927 Tex. Gen. Laws 353, 353 (allowing common school districts to become independent school districts and providing that a petition to become an independent school district must contain a definite description by metes and bounds of the district); Act of Apr. 15, 1905, 29th Leg., R.S., ch. 124, § 53, 1905 Tex. Gen. Laws 263, 277 (providing that when creating common school districts, the commissioners court shall give the metes and bounds of each district "and shall designate the same carefully by giving the whole surveys and parts of surveys with acreage of whole surveys and approximate acreage of parts of surveys" and that the county

Furthermore, in 1911, the Legislature provided for the creation of independent school districts that included territory in more than one county—such as Roanoke ISD—and provided that in the creation of such a district, a map had to be provided that showed the correct location and position of the county line.[28] Thus, presuming that the orders complied with the statutory requirements,[29] the location indicated by reference to the county line is ascertainable and therefore certain.

CISD contends that it is not attempting to detach or annex NWISD property (a proposition we agreed with under the pleadings and the evidence in the previous interlocutory appeal).[30] We agree that CISD does not *expressly* seek to detach or annex NWISD property—any suit of that nature would require it to recognize that the property it now claims is currently a part of NWISD and to follow the statutory provisions set out for detaching or annexing school district

clerk must record the description), § 55, 1905 Tex. Gen. Laws at 277–78 (allowing for the creation of county line districts).

[28]Act of Mar. 23, 1911, 32nd Leg., R.S., ch. 100, § 4, 1911 Tex. Gen. Laws 200, 202 (allowing the creation of independent school districts that include territory in more than one county and requiring a map that shows the correct location and position of the county line involved).

[29]*See Leon Cnty. Sch. Trs.*, 203 S.W.2d at 863.

[30]*CISD I*, 245 S.W.3d at 624–25 (considering CISD's pleadings "and the relevant jurisdictional evidence submitted by both parties" and holding that CISD did not seek to detach and annex the disputed area from NWISD, "but seeks only a judicial determination regarding in which of these districts the [d]isputed [a]rea is, and always has been, located").

property.[31]  CISD therefore argues instead that the true boundary line exists in a place that the voters and commissioners creating NWISD did not and could not have ever intended the boundary line to be, for the simple reason that the line had not been surveyed and therefore did not exist at the time of NWISD's creation.  Wherever the counties might have believed the county line to be at the time that the school districts were created, neither Tarrant County nor Denton County could have believed that their common boundary was at the agreed county line when that line had not been established by any survey at that time.  Further, we note that the commissioners courts of both Tarrant County and Denton County entered orders establishing this district with the boundary line complained of by CISD, which appears to contradict any argument that the counties disputed at the time of NWISD's establishment where this part of the county line was, or at least is evidence that they were in agreement about this part of the line.

NWISD asserted in its plea to the jurisdiction that the two school districts have always recognized a boundary line and that the territory CISD wishes to now include within its boundaries has been considered to be a part of NWISD since that district's creation.  NWISD asserted that it has taxed the property within that territory and educated the students within it.  CISD has acknowledged that this assertion is true.  Thus, CISD's argument that it does not attempt to

---

[31] *See, e.g.*, Tex. Educ. Code Ann. § 13.051 (West 2006).

15

detach territory from NWISD is essentially semantics. That is, however we categorize the CISD cause of action or the relief it has requested, the effect would the same: school children that until now were educated by NWISD, and property that until now was taxed by NWISD, would now be within CISD's territory.[32]

This court has not been asked to hold that the districts are prohibited from taking any action that may be provided by law to clarify their boundary if the two districts have a bona fide boundary dispute, and nothing in this opinion should be construed as reaching such a holding. We hold only that CISD may not argue that the 1948 and 1949 elections set the boundary line at the agreed county line

---

[32] *See State ex rel. Beckville Indep. Sch. Dist. v. Tatum Indep. Sch. Dist.*, 283 S.W.2d 802, 805 (Tex. App.—Texarkana 1955, writ ref'd n.r.e.) (noting that a specific road had been recognized as the dividing line between two school districts, taxes had been assessed and paid based on that line, and scholastic census and school buses operated on that basis, and holding that while the recognition alone would not be sufficient to establish that road as the dividing line, it was "certainly a strong circumstance" showing that the road was the location of the dividing line); *see also Mullaly v. Noyes*, 26 S.W. 145, 145–46 (Tex. Civ. App.—San Antonio 1894, writ ref'd) (holding that, with respect to property conveyed, the fact that a line had been acquiesced in for a long time as the true boundary line, "it affords strong evidence that it was the true line"); *Del Rio Indep. Sch. Dist. of Val Verde Cnty. v. Aldrete*, 398 S.W.2d 597, 600–01 (Tex. App.—San Antonio 1965, writ dism'd) (holding in a contest of an election consolidating two school districts that, in establishing who may vote within a district, "where the location of a boundary line is not certain, the residence of the voters should be determined in accordance with the recognized line," and that the boundary line that should have been applied to the election contest was the line that had been recognized by custom and usage "and according to which taxes were assessed and paid, the residence of scholastics established and tuition paid, rather than a new boundary line located by a survey made subsequent to the election, which had never before been used and recognized by the school authorities").

16

because that line did not exist until it was surveyed and created in accordance with a 1986 agreement between the counties.[33] The school district elections set the boundary at an actual, physical point. CISD may not seek to have that existing point (wherever it may be) abandoned, and a new boundary set in its place, all based on a subsequent judgment involving the boundaries of two completely separate entities.

Though not determinative of the issue, we note that any attempt to create a school district with a floating, movable boundary line would conflict with the Legislature's apparent establishment of a public policy of providing notice to and requiring consent by district residents to changes to a school district boundary. This policy is evidenced by statutory requirements that no territory be moved from one district to another without proper notice and consent of a majority of qualified voters in the territory unless no children in the transferred territory are enrolled in the district from which the territory will be transferred.[34] In other

---

[33] *Tarrant Cnty.*, 87 S.W.3d at 166.

[34] *See* Tex. Educ. Code Ann. §§ 13.051 (allowing detachment of territory from one school district and annexation of that territory to another upon petition by a majority of qualified residents of the territory, notice provided by the board of trustees, and a public hearing), 13.153 (providing that notice must be given of any election to consolidate districts), 13.154 (providing that districts shall be consolidated if a majority in each district vote in favor), 13.231 (allowing two contiguous school districts to adjust their common boundary by agreement if no child residing in the transferred territory is enrolled in a school of the district from which the territory is transferred); *see also Sch. Bd. of City of Marshall v. State by Criminal Dist. Atty. ex rel. Warbritton*, 162 Tex. 9, 11, 343 S.W.2d 247, 249 (1961) (noting that the determination of political questions such as the relocation

words, the public policy of this state is that the right of parents to have their children educated in a particular school district shall not be abrogated by the action of the school districts acting alone without notice and consent of the voters.[35]

In summary, we agree with NWISD that CISD is challenging the results of the elections and is therefore making an impermissible collateral attack on those elections. Accordingly, the trial court did not have jurisdiction over CISD's claims, and we sustain NWISD's third issue. Having sustained NWISD's third issue, we do not address NWISD's remaining issues, all of which argue that the trial court did not have jurisdiction.[36]

In its sixth attempt at pleading, CISD sought to have the trial court to declare the school district boundary line to be the agreed county line, and alternatively sought to establish title to the area in question, and, for the reasons discussed above, this court has held that the trial court had no jurisdiction over these claims or to grant such relief. Because CISD cannot amend its petition so as to give the trial court jurisdiction over these claims, it is unnecessary for this

of school district boundaries is to be made by the Legislature "or in such manner as it directs").

[35] *See, e.g.*, *Gabbart v. Johnson*, 55 Tex. Civ. App. 181, 183, 118 S.W. 883, 884 (Tex. Civ. App.—Fort Worth 1909, no writ) (discussing law providing for method of changing school district boundaries after the districts had been formed and stating that "[t]he evident purpose of the Legislature was to prevent disturbance of existing conditions when once lawfully brought about").

[36] *See* Tex. R. App. P. 47.4; *see also* Tex. R. App. P. 47.1.

18

court to remand the cause to the trial court for another opportunity for CISD to amend its pleadings.[37]

## Conclusion

Having sustained NWISD's third issue, we reverse the trial court's order denying NWISD's plea to the jurisdiction and render judgment dismissing CISD's claims.

LEE ANN DAUPHINOT
JUSTICE

PANEL:  LIVINGSTON, C.J.; DAUPHINOT and MCCOY, JJ.

DELIVERED:  February 16, 2012

---

[37] *See Miranda*, 133 S.W.3d at 227 (stating that if the pleadings affirmatively negate the existence of jurisdiction, then a plea to the jurisdiction may be granted without allowing the plaintiff an opportunity to amend).

19