02-10-105-CV










 

 

 

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

 

NO. 02-10-00105-CV

 

 


 
 
 Northwest Independent School District
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 Carroll IndEpendent School District
 
 
  
 
 
 APPELLEE
 
 


 

 

----------

FROM THE 141st
District Court OF Tarrant COUNTY

----------

MEMORANDUM
OPINION[1]

----------

This
appeal arises from a dispute between Appellant Northwest Independent School District
(NWISD) and Carroll Independent School District (CISD) over their common
boundary line.  NWISD filed this interlocutory appeal arguing that the trial
court did not have jurisdiction over CISD’s claims.  Because we agree that the
trial court did not have jurisdiction over CISD’s claims, we reverse the trial
court’s denial of NWISD’s plea to the jurisdiction and dismiss CISD’s claims.

Background

In
1948, voters in the Haslet Common School District No. 97 (situated partly in
Tarrant County and partly in Denton County), Rhome Independent School District
(in Wise County), Roanoke Independent School District (situated partly in
Tarrant County and partly in Denton County), and Justin Rural High School
District (in Denton County) petitioned for an election to consolidate those
districts into one independent school district—NWISD.  A majority of qualified
voters in those districts voted in favor of consolidation.  The minutes of the
Tarrant County commissioners court reflect an order by the county judge in
accordance with the election, declaring the results of the election and declaring
that the districts be consolidated as NWISD.

The
minutes of the commissioners court for Denton County likewise reflect a
petition by qualified voters of Roanoke Independent School District and of
Justin Rural School District to hold an election for the consolidation.  In
accordance with that petition, the commissioners court gave notice of elections
to be held in December 1948 within those districts.  The notice stated that
Roanoke ISD was partially in Tarrant County and partially in Denton County.  After
the election, the commissioners court entered an order declaring the results of
the election and declaring the districts to be consolidated.

The
order of consolidation, which provides the metes and bounds for the new
district, described part of the boundary as “East to the Northeast corner of
the said R. A. Smith survey; THENCE South to the County Line between Denton
and Tarrant Counties; THENCE West along said County line to a point
in said line due North of the Northwest corner of the M. Hunt survey in Tarrant
County.”  [Emphasis added.]  The description concluded by referring to the new
district as 

containing a total of 126,062 acres of land more or less,
calculated to be 197 square miles, being a consolidation of all the lands
comprising the school districts known prior to this consolidation as the
Justin Rural High School District in Denton County, [t]he Roanoke Independent
School District in Denton and Tarrant Counties, the Haslet Common School
District in Denton and Tarrant Counties, and the Rhome Independent School
District in Wise County.  [Emphasis added.]

Then,
in 1949, qualified voters from the newly-consolidated NWISD “of Denton, Wise[,]
and Tarrant Counties” petitioned for an election to consolidate the district
with Fairview Common School District No. 39 of Wise County.  In accordance with
the election results, the commissioners court for Denton County entered an
order declaring the districts to be consolidated.  This order described the new
boundaries of the district by metes and bounds.  The description included the
same reference to the Denton-Tarrant county line set out above.  As with the
description given when the district was first created by consolidation, the
order stated after the metes and bounds description that the consolidated NWISD
is “a consolidation of all the lands comprising the school districts”
that were being consolidated.  [Emphasis added.]

The
Wise County commissioners court likewise entered an order of consolidation in
accordance with the consolidation election held in the Fairview district.

In
1959, qualified voters of Carroll Common School District No. 99 voted to become
CISD.  In accordance with the election, the county judge ordered the district
incorporated as CISD and entered the order in the minutes of the commissioners
court for Tarrant County.  The district boundaries were described by metes and
bounds, “[b]eginning in the North line of Tarrant County at a point directly
north of the most northerly, northwest corner of the John L. Whitman Survey,”
and closing “[n]orth to a point in the North line of Tarrant County,
Texas; THENCE east in the said Tarrant County North line to the place of
Beginning.”  [Emphasis added.]

In
2002, this court decided Tarrant County v. Denton County, in which we
stated that the boundary between those two counties was not definite and
well-defined, and we noted that the counties had entered into an agreement providing
that they had a bona fide dispute over the location of their boundaries.[2] 
This court then held that the agreement between the counties to survey the
county line and set the boundary in accordance with that survey was
enforceable.[3]  As
a result of this decision, the boundary line between Tarrant County and Denton
County was set at a location north of where the two school districts had previously
considered their common boundary to be (the agreed county line).

On
March 1, 2005, CISD filed suit against NWISD for trespass to try title, seeking
to have the common boundary line established at the agreed county line, which
would shift to CISD some property and students that have until now been in NWISD.
 CISD also sought a declaratory judgment regarding its rights and duties in the
disputed area.

NWISD
filed a plea to the jurisdiction, which the trial court granted.[4] 
This court reversed the trial court’s ruling and remanded the cause back to the
trial court.[5]  On
remand, CISD amended its pleadings, seeking a declaratory judgment that the
districts’ common boundary line is located on the agreed county line and
asserting alternatively a claim for trespass to try title under section 22.001
of the property code.

NWISD
filed another plea to the jurisdiction, and both parties filed for summary
judgment and attached evidence in support.  NWISD reasserted some of the same
grounds it had asserted in its previous plea to the jurisdiction and additionally
argued that CISD’s claims were an impermissible attack on the 1948 and 1949
elections creating NWISD.  CISD responded in part that it was not challenging
the elections or the commissioners court orders resulting from those elections
and was in fact relying on them.

The
trial court entered an order denying NWISD’s plea to the jurisdiction, granting
summary judgment for NWISD on CISD’s claim for trespass to try title, denying
the remainder of NWISD’s summary judgment motion, and denying CISD’s summary
judgment motion.  NWISD then filed this appeal.

Standard
of Review

We
review a trial court’s ruling on a plea to the jurisdiction de novo.[6]
 A plaintiff has the burden of alleging facts that affirmatively demonstrate
that the trial court has subject-matter jurisdiction.[7]
 A plaintiff asserting a claim against a governmental unit must allege facts
that affirmatively demonstrate that the Legislature has waived immunity for the
claims brought.[8]

In
determining a plea to the jurisdiction that challenges the pleadings, a court looks
at the allegations in the plaintiff’s pleadings and accepts them as true.[9]
 If the pleadings affirmatively negate the existence of jurisdiction, then a
plea to the jurisdiction may be granted without allowing the plaintiffs an
opportunity to amend.[10]

If
the plea to the jurisdiction challenges the existence of jurisdictional facts,
a court must consider the relevant evidence necessary to resolve the
jurisdictional issues raised.[11]  When a jurisdictional
challenge also implicates the merits of the plaintiff’s claim, then the trial
court considers the evidence submitted by the parties to determine if a fact
question exists.[12]

Declaratory
Judgments and Governmental Immunity

The
Declaratory Judgments Act (DJA) generally permits a person “whose rights,
status, or other legal relations are affected by a statute [or] municipal
ordinance” to have determined any question of construction or validity arising
under the statute or ordinance “and obtain a declaration of rights, status, or
other legal relations thereunder.”[13]  But there is no general
right to sue a governmental entity, such as a school district,[14]
for a declaration of rights.[15]  The DJA is not a
general waiver of immunity; the DJA is “merely a procedural device for deciding
cases already within a court’s jurisdiction.”[16]  Thus, governmental
immunity will bar a declaratory judgment action if the action has the “effect
of establishing a right to relief against the State for which the Legislature
has not waived . . . immunity.”[17]  

Analysis

We
begin by addressing CISD’s assertion that some of NWISD’s arguments are
governed by the law of the case doctrine.  The application of that doctrine by
a court of appeals lies within the discretion of that court, depending on the
particular circumstances of the case, and “[o]ur duty to administer justice
under the law, as we conceive it, outweighs our duty to be consistent.[18]  Thus, if we
determined that our prior decision was erroneous, we would not be bound by it.[19]  In this appeal,
however, the law of the case doctrine is inapplicable.  Not only did the
parties amend their pleadings on remand and file additional evidence with the
trial court, but the issue on which we decide this appeal is one that was not
raised in the prior appeal.[20]

NWISD
brings three issues on appeal, all asserting that the trial court did not have
jurisdiction over CISD’s claims.  In its third issue, it argues that the trial
court lacked jurisdiction to adjudicate CISD’s claims because CISD’s lawsuit is
an untimely contest to the election creating NWISD and its boundaries.  It contends
that CISD’s claims “lodge an election contest by challenging the results of the
election creating NWISD and setting its then-existing southern boundary” and
that CISD “seeks to avoid the results of the 1948 and 1949 elections.”

A
trial court has jurisdiction over an election contest only to the extent
authorized by statute.[21]  If CISD challenges the
boundaries set by the election, then it challenges the results of the election,
and that challenge can only be made in an election contest.[22] 
Accordingly, if CISD’s suit challenges the results of the election, the suit would
constitute an improper collateral attack on the election, and, in that case, the
trial court erred by denying NWISD’s plea to the jurisdiction.

CISD
responds that rather than challenging the elections, it is relying on them,
because the elections and the orders declaring the election results established
the districts’ boundary at the “county line,” and CISD is merely seeking a
declaration about the location of that line.  CISD contends that the argument
that it is trying to move the boundary line is contradicted by the statement in
Tarrant County that the county line had never been located.[23]
 That is, a line that does not exist cannot be moved.

CISD
is essentially asserting that the districts’ common boundary line has always
been in dispute, that the school districts have never treated the boundary as
established, and that the trial court’s judgment is needed to settle the
question.  CISD is only relying on the election if the result of the election
was the establishment of a school district either with no boundary or with a
boundary that moves according to wherever the county line may be located at any
point in time.  That is, CISD apparently reads the language establishing the
district as setting the boundary line as “wherever the county line may be
located, now or at any time in the future.”  CISD is correct that this court
held in Tarrant County that the boundary between the two counties was not
definite and well-defined, but that does not necessarily mean that the location
of the county line was not definite for school district purposes.  That is, a
later dispute between counties over the location of their boundary
cannot change the boundary of two school districts already in existence.

We
agree with NWISD that CISD is in fact attempting to move the districts’
boundary line because that location was established when NWISD was created by
consolidation.  NWISD was created by consolidation of districts that were
already in existence.  As noted in the description of the new district created
by consolidation, the new district consisted of all of the lands comprising the
school districts being consolidated.  Though such language is not controlling
if the land included in the consolidation can be ascertained by the metes and
bounds provided, this language is evidence that all of the territory of the consolidated
school districts was included in the consolidation.[24]
 No allegation has been made that the boundary lines of these consolidated
districts was ever unclear.[25]  The districts that
already existed had boundary lines—the location of which CISD does not
challenge.  The territory that had been included in those districts became a
part of the new, consolidated NWISD.  The voters seeking to establish the new
district clearly intended to and did incorporate the territory that had been in
the consolidated school districts, no more and no less.  Those districts had
actual, existing boundaries; the descriptions of the districts referred to an
actual, physical location when they referenced the county line; and the
elections and orders creating NWISD established that location as the actual,
physical boundary.

The
parties have not directed us to any evidence in the record of when the component
school districts of NWISD were created, and we have found none.  But we note
that from 1911 until 1917, when creating common school districts containing
territory within more than one county, the commissioners courts of each county (and
from 1917 until at least 1923, the boards of county school trustees) were
required to pass an order describing the district’s territory by metes and
bounds, “giving the course and direction with the exact length of each line
contained in such description and locating each corner called for upon the
ground,” as well as stating “the acres of each survey and parts of surveys of
lands contained in such district, together with a map showing the conditions
upon the ground as described in the field notes” and “giving the number of
acres of land contained in each survey and parts of survey contained in each
county,” and, importantly, “showing the exact position and location of the
county line in the territory created.”[26]  The Haslet Common
School District included territory in both Denton and Tarrant County.  If that
district were created while that statute was in effect, when the commissioners
or trustees of those two counties passed the orders creating this district,
they were required to give a metes and bounds description, provide a map, and
show the exact position of the county line.[27]

Furthermore,
in 1911, the Legislature provided for the creation of independent school
districts that included territory in more than one county—such as Roanoke
ISD—and provided that in the creation of such a district, a map had to be
provided that showed the correct location and position of the county line.[28] 
Thus, presuming that the orders complied with the statutory requirements,[29]
the location indicated by reference to the county line is ascertainable and
therefore certain.

CISD
contends that it is not attempting to detach or annex NWISD property (a
proposition we agreed with under the pleadings and the evidence in the previous
interlocutory appeal).[30]  We agree that CISD does
not expressly seek to detach or annex NWISD property—any suit of that
nature would require it to recognize that the property it now claims is
currently a part of NWISD and to follow the statutory provisions set out for
detaching or annexing school district property.[31]  CISD therefore argues instead
that the true boundary line exists in a place that the voters and commissioners
creating NWISD did not and could not have ever intended the boundary line to
be, for the simple reason that the line had not been surveyed and therefore did
not exist at the time of NWISD’s creation.  Wherever the counties might have
believed the county line to be at the time that the school districts were
created, neither Tarrant County nor Denton County could have believed that
their common boundary was at the agreed county line when that line had not been
established by any survey at that time.  Further, we note that the
commissioners courts of both Tarrant County and Denton County entered orders
establishing this district with the boundary line complained of by CISD, which
appears to contradict any argument that the counties disputed at the time of
NWISD’s establishment where this part of the county line was, or at least is
evidence that they were in agreement about this part of the line.

NWISD
asserted in its plea to the jurisdiction that the two school districts have
always recognized a boundary line and that the territory CISD wishes to now
include within its boundaries has been considered to be a part of NWISD since
that district’s creation.  NWISD asserted that it has taxed the property within
that territory and educated the students within it.  CISD has acknowledged that
this assertion is true.  Thus, CISD’s argument that it does not attempt to
detach territory from NWISD is essentially semantics.  That is, however we
categorize the CISD cause of action or the relief it has requested, the effect
would the same:  school children that until now were educated by NWISD, and
property that until now was taxed by NWISD, would now be within CISD’s
territory.[32]

This
court has not been asked to hold that the districts are prohibited from taking
any action that may be provided by law to clarify their boundary if the two
districts have a bona fide boundary dispute, and nothing in this opinion should
be construed as reaching such a holding.  We hold only that CISD may not argue
that the 1948 and 1949 elections set the boundary line at the agreed county
line because that line did not exist until it was surveyed and created in
accordance with a 1986 agreement between the counties.[33] 
The school district elections set the boundary at an actual, physical point. 
CISD may not seek to have that existing point (wherever it may be) abandoned,
and a new boundary set in its place, all based on a subsequent judgment
involving the boundaries of two completely separate entities.

Though
not determinative of the issue, we note that any attempt to create a school
district with a floating, movable boundary line would conflict with the Legislature’s
apparent establishment of a public policy of providing notice to and requiring consent
by district residents to changes to a school district boundary.  This policy is
evidenced by statutory requirements that no territory be moved from one
district to another without proper notice and consent of a majority of
qualified voters in the territory unless no children in the transferred
territory are enrolled in the district from which the territory will be
transferred.[34]  In other words, the
public policy of this state is that the right of parents to have their children
educated in a particular school district shall not be abrogated by the action
of the school districts acting alone without notice and consent of the voters.[35]

In
summary, we agree with NWISD that CISD is challenging the results of the elections
and is therefore making an impermissible collateral attack on those elections. 
Accordingly, the trial court did not have jurisdiction over CISD’s claims, and we
sustain NWISD’s third issue.  Having sustained NWISD’s third issue, we do not
address NWISD’s remaining issues, all of which argue that the trial court did
not have jurisdiction.[36]

In
its sixth attempt at pleading, CISD sought to have the trial court to declare
the school district boundary line to be the agreed county line, and
alternatively sought to establish title to the area in question, and, for the
reasons discussed above, this court has held that the trial court had no
jurisdiction over these claims or to grant such relief.  Because CISD cannot
amend its petition so as to give the trial court jurisdiction over these claims,
it is unnecessary for this court to remand the cause to the trial court for another
opportunity for CISD to amend its pleadings.[37]

Conclusion

Having
sustained NWISD’s third issue, we reverse the trial court’s order denying NWISD’s
plea to the jurisdiction and render judgment dismissing CISD’s claims.

 

 

LEE ANN DAUPHINOT
JUSTICE

 

PANEL: 
LIVINGSTON,
C.J.; DAUPHINOT and MCCOY, JJ.

 

DELIVERED:  February 16,
2012









[1]See Tex. R. App. P. 47.4.





[2]Tarrant
Cnty. v. Denton Cnty., 87 S.W.3d 159, 173 (Tex. App.—Fort Worth 2002, pet.
denied), disapproved of on other grounds by Martin v. Amerman, 133
S.W.3d 262, 268 (Tex. 2004).





[3]Id.
at 175.





[4]Carroll
Indep. Sch. Dist. v. Nw. Indep. Sch. Dist., 245 S.W.3d 620, 623 (Tex.
App.—Fort Worth 2008, pet. denied) (CISD I).





[5]Id.
at 626.





[6]Pakdimounivong v. City of Arlington,
219 S.W.3d 401, 407 (Tex. App.—Fort Worth 2006, pet. denied).





[7]City of Fort Worth v. Robinson, 300
S.W.3d 892, 895 (Tex. App.—Fort
Worth 2009, no pet.).





[8]City of Arlington v. Randall, 301
S.W.3d 896, 906 (Tex. App.—Fort
Worth 2009, pet. denied).





[9]Tex. Dep’t of Parks & Wildlife v. Miranda, 133 S.W.3d 217, 226 (Tex. 2004); Pakdimounivong, 219
S.W.3d at 407.





[10]State
v. Lueck, 290 S.W.3d 876, 884–85 (Tex. 2009); Miranda, 133 S.W.3d at
227.





[11]Miranda, 133 S.W.3d at 227.





[12]Id.





[13]Tex. Civ. Prac. & Rem. Code Ann. § 37.004(a) (West 2008).





[14]See
San Antonio Indep. Sch. Dist. v. McKinney, 936 S.W.2d 279, 283 (Tex. 1996)
(noting that the Legislature has defined school districts as political subdivisions
of the State for purposes of sovereign immunity).





[15]See Tex. Parks & Wildlife Dep’t
v. Sawyer Trust, 354 S.W.3d 384, 388 (Tex. 2011)
(agreeing that “there is no general right to sue a state agency for a
declaration of rights”).





[16]Tex. Ass’n of Bus. v. Tex. Air Control Bd., 852 S.W.2d 440, 444 (Tex. 1993).





[17]Sawyer Trust, 354 S.W.3d at 388.





[18]Briscoe v. Goodmark Corp., 102 S.W.3d
714, 717 (Tex. 2003).





[19]See id. at 716.





[20]See Hudson v. Wakefield, 711 S.W.2d
628, 630 (Tex. 1986) (stating that the doctrine applies only to questions of
law, not to questions of fact, and that “the doctrine
does not necessarily apply when either the issues or the facts presented at
successive appeals are not substantially the same as those involved on the
first trial” and thus, “when in the second trial or proceeding, one or both of
the parties amend their pleadings, it may be that the issues or facts have
sufficiently changed so that the law of the case no longer applies”).





[21]Nichols v. Seei, 97 S.W.3d 882, 883
(Tex. App.—Dallas 2003, no pet.); State ex rel. Kimmons v. City of Azle,
588 S.W.2d 666, 670 (Tex. Civ. App.—Fort Worth 1979, writ ref’d n.r.e.).





[22]See Clary v. Hurst, 104 Tex. 423, 431,
138 S.W. 566, 571 (1911) (referring to an election contest as a suit challenging
the validity of the election or the correct ascertainment of the result
thereof); Kincannon v. Mills, 275 S.W. 1083, 1084 (Tex. Civ. App.—Waco
1925, writ dism’d w.o.j.) (“An election contest may be . . . for the purpose of having the result declared differently from what
it has been declared by the proper authorities.”); see also Nichols,
97 S.W.3d at 883 (noting that the power of a trial court to hear election
contests exists only to the extent authorized by statute); State v. City
Comm’n of San Angelo, 101 S.W.2d 360, 362 (Tex. Civ. App.—Austin 1937, no
writ) (noting that matters that are properly raised in an election contest
cannot be raised in collateral proceedings).





[23]See
Tarrant Cnty., 87 S.W.3d at 173 (noting that Denton County and Tarrant
County had a bona fide dispute over their common boundary and that the boundary
was not definite and well-defined).





[24]See
Baleja v. Henderson, 241 S.W. 1080, 1082 (Tex. Civ. App.—San Antonio 1922,
writ dism’d w.o.j.) (stating that, with respect to sales of land, “[i]t is the rule
in descriptions of land, after giving metes and bounds, to state the number of
acres,” that “unless there is an express covenant that the land conveyed
contains the number of acres mentioned, the mention of the number of acres will
be taken to be merely a part of the description of the land when the amount of
the land can be ascertained by monuments and boundaries,” and that “[t]he
language of the contract of sale must show that it was intended to convey a
specified number of acres, or the mention of the number of acres will be merely
a matter of description”).





[25]See,
e.g., Dist. Trs. of Midway Common Sch. Dist. No. 7 & Leon Cnty. v. Leon Cnty.
Sch. Trs., 203 S.W.2d 860, 863 (Tex. Civ. App.—Waco 1947, no writ) (holding
that order consolidating two contiguous common school districts was not void
for failure to describe the district by metes and bounds because, there being
no evidence to the contrary, the boundaries of the two districts were presumed
to be described and recorded in the county clerk’s office and, citing the maxim
“[t]hat is certain which is susceptible of being made certain,” holding that
because the metes and bounds of the newly created high school district could be
ascertained by reference to the records in the county clerk’s office, the location
of the boundaries of the two common school districts were presumed to be of
record).





[26]Drake
v. Yawn, 248 S.W. 726, 728 (Tex. Civ. App.—Beaumont 1923, writ ref’d)
(emphasis added).





[27]See
also Act of Mar. 30, 1927, 40th Leg., R.S., ch 238, § 1, 1927 Tex. Gen.
Laws 353, 353 (allowing common school districts to become independent school
districts and providing that a petition to become an independent school
district must contain a definite description by metes and bounds of the
district); Act of Apr. 15, 1905, 29th Leg., R.S., ch. 124, § 53, 1905 Tex. Gen.
Laws 263, 277 (providing that when creating common school districts, the
commissioners court shall give the metes and bounds of each district “and shall
designate the same carefully by giving the whole surveys and parts of surveys
with acreage of whole surveys and approximate acreage of parts of surveys” and
that the county clerk must record the description), § 55, 1905 Tex. Gen. Laws
at 277–78 (allowing for the creation of county line districts).





[28]Act of
Mar. 23, 1911, 32nd Leg., R.S., ch. 100, § 4, 1911 Tex. Gen. Laws 200, 202
(allowing the creation of independent school districts that include territory
in more than one county and requiring a map that shows the correct location and
position of the county line involved).





[29]See
Leon Cnty. Sch. Trs., 203 S.W.2d at 863.





[30]CISD
I, 245 S.W.3d at 624–25 (considering CISD’s pleadings “and the relevant
jurisdictional evidence submitted by both parties” and holding that CISD did
not seek to detach and annex the disputed area from NWISD, “but seeks only a
judicial determination regarding in which of these districts the [d]isputed [a]rea
is, and always has been, located”).





[31]See,
e.g., Tex. Educ. Code Ann. § 13.051 (West 2006).





[32]See
State ex rel. Beckville Indep. Sch. Dist. v. Tatum Indep. Sch. Dist., 283
S.W.2d 802, 805 (Tex. App.—Texarkana 1955, writ ref’d n.r.e.) (noting that a
specific road had been recognized as the dividing line between two school
districts, taxes had been assessed and paid based on that line, and scholastic
census and school buses operated on that basis, and holding that while the
recognition alone would not be sufficient to establish that road as the
dividing line, it was “certainly a strong circumstance” showing that the road
was the location of the dividing line); see also Mullaly v. Noyes, 26
S.W. 145, 145–46 (Tex. Civ. App.—San Antonio 1894, writ ref’d) (holding that,
with respect to property conveyed, the fact that a line had been acquiesced in
for a long time as the true boundary line, “it affords strong evidence that it
was the true line”); Del Rio Indep. Sch. Dist. of Val Verde Cnty. v. Aldrete,
398 S.W.2d 597, 600–01 (Tex. App.—San Antonio 1965, writ dism’d) (holding in a
contest of an election consolidating two school districts that, in establishing
who may vote within a district, “where the location of a boundary line is not
certain, the residence of the voters should be determined in accordance with
the recognized line,” and that the boundary line that should have been applied
to the election contest was the line that had been recognized by custom and
usage “and according to which taxes were assessed and paid, the residence of
scholastics established and tuition paid, rather than a new boundary line
located by a survey made subsequent to the election, which had never before
been used and recognized by the school authorities”).





[33]Tarrant
Cnty., 87 S.W.3d at 166.





[34]See
Tex. Educ. Code Ann. §§ 13.051 (allowing detachment of territory from one
school district and annexation of that territory to another upon petition by a
majority of qualified residents of the territory, notice provided by the board
of trustees, and a public hearing), 13.153 (providing that notice must be given
of any election to consolidate districts), 13.154 (providing that districts
shall be consolidated if a majority in each district vote in favor), 13.231
(allowing two contiguous school districts to adjust their common boundary by
agreement if no child residing in the transferred territory is enrolled in a
school of the district from which the territory is transferred); see also
Sch. Bd. of City of Marshall v. State by Criminal Dist. Atty. ex rel.
Warbritton, 162 Tex. 9, 11, 343 S.W.2d 247, 249 (1961) (noting that the
determination of political questions such as the relocation of school district
boundaries is to be made by the Legislature “or in such manner as it directs”).





[35]See,
e.g., Gabbart v. Johnson, 55 Tex. Civ. App. 181, 183, 118 S.W. 883,
884 (Tex. Civ. App.—Fort Worth 1909, no writ) (discussing law providing for
method of changing school district boundaries after the districts had been
formed and stating that “[t]he evident purpose of the Legislature was to
prevent disturbance of existing conditions when once lawfully brought about”).





[36]See
Tex. R. App. P. 47.4; see also Tex. R. App. P. 47.1.





[37]See
Miranda, 133 S.W.3d at 227 (stating that if the pleadings affirmatively
negate the existence of jurisdiction, then a plea to the jurisdiction may be
granted without allowing the plaintiff an opportunity to amend).